Fletcher, J.
This action was referred to a very able and competent arbitrator, before whom the parties were fully heard, *275 Out who, without making any final award, has reported a mass of pamphlets, documents, and writings, for the court to examine, in order to ascertain the facts, and settle the rights of the.parties, and then the decision of the court is to be made the report of the arbitrator. There are some questions of a preliminary nature, which may perhaps be most properly considered, before considering the main grounds of defence.
The plaintiffs were the trustees of a land company, having the title of the land in themselves in trust for the.stockholders, and the notes in question in this suit were given to the plaintiffs, as such trustees, for land, which the plaintiffs gave ai obligation to the defendant to convey to him on payment of the notes. It was maintained, on the part of the defendant, that one of the trustees had relinquished his trust, and had made a conveyance of all his right in the land to the other trustees, and that by reason of such resignation, the suit could not be maintained in his name. Whether or not there had been such an effectual conveyance by the trustee did not clearly appear, but assuming it to be as clear as it is supposed to.be by the defendant, the action may well be maintained; there being nothing to show that the plaintiffs are not able to make the defendant a good title to the land, according to their obligation, upon payment of the notes. The plaintiffs being parties to the notes, a suit may be maintained in their names, for the benefit of those who are really in interest, and for whose benefit the notes were taken. This case is entirely different in principle from that of Adams v. Leland, 7 Pick. 62, which was referred to by the defendant’s counsel.
The defendant also relies upon two letters, one written by one of the plaintiffs, and the other by another of the plaintiffs, each in his letter expressing an opinion that the defendant is under no legal obligation to pay these notes. Various objections were taken before the arbitrator to the admissibility of these letters, which it is not necessary to consider. They do not contain the admission of any material fact, but merely an expression of opinion as to the law. But an expression of the opinion of one of the parties as to the law cannot surely affect the legal rights of either party, or relieve the court of any *276 portion of their duty, to consider and adjudicate upon those rights.
But it is said that the plaintiffs, by the expression of such opinions, have encouraged the defendant to incur expense in setting up and maintaining his defence, and that therefore the plaintiffs are estopped now to maintain those legal rights. But surely these opinions do not come within the class of admissions, which are conclusive against a party; even if these plaintiffs were the real parties in interest. Such admissions are admissions of facts ; these are opinions ; and opinions not of facts but of law. Nor can we yield to the force of the argument, as to the weight to be given to these opinions, from a consideration of the better means, which the persons expressing them had of knowing the intention and meaning of the parties, from the surrounding circumstances. The court must form its own opinion óf the intention and meaning of the parties, from the evidence before them in the case.
To understand the other grounds of defence, it is necessarj to present a summary of the facts of the case.
It appears, that in the year 1837, a voluntary association of persons was formed, called the Brunswick Land company, who were the proprietors of a quantity of land at Brunswick, in Georgia, the title to which was vested in these plaintiffs, as trustees, who held the same in trust for the stockholders. It appears, further, that there was at the same time a company incorporated by the legislature of the state of Georgia, called the Brunswick Canal and Railroad company, for the purpose of constructing a canal to conduct the waters of the Altamaha river into the harbor of Brunswick ; thus opening a communication between the harbor of Brunswick and the interior of the state. It was calculated that "the opening of this canal would make Brunswick a great commercial depot, and that of course the lands owned by the land company would become of great value, and give vast gains to the proprietors. There was thus a very intimate connection between these two companies, and the stockholders in truth were nearly though not precisely the same persons. There was a mutual coopeation, though a separate organization, of the two companies. *277 The defendant was an active member of both, and for some time a director of the land company.
It was well understood, by all parties, that the enterprise of establishing a commercial depot and building a great city at Brunswick, and of course the value of these lands, depended on the completion of the canal. But all parties, the land company and the canal company, had full faith and the most sanguine and confident expectations, that the canal would be speedily completed; and in pamphlets and otherwise, this faith and confidence were expressed in strong terms. All this was done honestly and in perfect good faith, and apparently on good and solid grounds. Under these circumstances, when to the view of the defendant and his associates, the waters of the Altamaha were soon to be conducted into the harbor of Brunswick, upon which event, it was most confidently believed by all parties, that the Brunswick Land company’s land would at once acquire a new and greatly enhanced value, — on the 25th of May, 1837, the land company offered some of its lands for sale by public auction.
At this sale, the defendant, an active member of both companies, and possessing all the knowledge and means of knowledge, which were possessed by any one, in regard to the affairs and prospects of both companies, became the purchaser of several lots. Agreeably to the terms of sale, he paid a part of the purchase-money, and gave his notes for the remainder; and the plaintiffs gave him their obligation to convey the lands upon payment of the notes, according to the terms of sale. The defendant paid one note and some interest on the others ; and this suit is instituted to recover payment of the three remaining notes, which have never been paid, and which the defendant refuses to pay.
Unexpected obstacles were encountered in the construction of the canal; and in 1840 the enterprise was abandoned; and, with it, of course, ended the project of making Brunswick a great city and commercial depot; and the lands thus purchased by the defendant consequently became and have since remained of little or no value. In short, the high expectations of both the land company and the canal company have *278 been entirely and completely disappointed, and their hopes blasted.
xThe defendant now refuses to pay his notes on various grounds : — that they are without consideration ; that the consideration has failed ; that the notes were given upon assurances that the canal would be made, which have not been fulfilled ; that there was mutual error and mistake, and the expectations of the parties have failed; that the plaintiffs’ agent declared that the canal would be finished in one year. These several grounds of defence have been very ably and fully argued by the defendant’s counsel, but it is not necessary to go into a minute and separate consideration of them.
There is no doubt or difficulty, as to any principle of law; but the difficulty is, that the facts do not bring the case within any legal principle, upon which the defence rests. The notes were given for the land; the defendant can have the land upon paying the notes, according to the original agreement. There is therefore no want and no failure of consideration. Then, as to the assurances in regard to the canal; there at as no covenant, no positive undertaking, that the canal shou/.d be completed. There was no fraud, no misrepresentation of facts; but merely an expression of expectation and belief, — honest, indeed, and strong and sanguine, — but, after all, mere expectation and belief, and nothing more. The failure of such expectation and belief can form no defence to an action on the notes.
So in regard to the alleged mutual error and mistake ; that rests also upon the failure to construct the canal. It is said, that in making the sale and purchase, both the plaintiffs and the defendant acted on the belief, that the canal would be made, and that without that belief the defendant would not have made the purchase ; and that as the canal has not been made, there was mutual error and mistake in this particular, which avoids the contract. But mutual error and mistake, to avoid a contract, must be error and mistake of some material existing fact or facts, and not merely as to some future, imaginary, and speculative event. At the time of this sale and purchase, all the parties knew that there was no existing *279 canal; but every thing in regard to it was wholly prospective and speculative. From the very nature of the case, every thing in regard to the canal was wholly prospective. All parties well knew, that there was no existing canal; but all confidently calculated, fully expected, and honestly believed, that there would be a canal; and acted upon such calculation, expectation and belief. The parties have all.no doubt been greatly disappointed. The enterprises of both the canal company and the land company, which at one time looked so promising, and raised such high hopes, have all signally failed. But there was no fraud, no warranty, no promise, no misrepresentation of existing facts, and no such mistake of fact, or facts, as can absolve the defendant from his engagement to pay the notes.
Then, it is maintained, on the part of the defendant, that by the written contract signed by the plaintiffs themselves, it was expressly provided, that the defendant might, at any time, at his pleasure, cease paying, or refuse to pay any of his notes remaining unpaid, thereby relinquishing to the plaintiffs what had already been paid ; and that the defendant, by refusing to pay any of his notes, at any time, violated no engagement on his part, and thereby furnished the' plaintiffs with no ground of action against him; but that the defendant had full right and liberty by the contract itself to stop paying any of his notes, at his pleasure; and that the plaintiffs, therefore, have no right of action against him on the notes in this suit. Now, upon referring to the contract, it seems most manifest that this position, on the part of the defendant, is wholly inconsistent with the terms and plain import of that instrument.
The agreement referred to, signed by the plaintiffs, contains first a certificate, that the defendant had become the purchaser, at public auction, of certain lots described, for the price mentioned; that he had paid down one fifth part of the purchase-money; and that for the other four fifths he had given the plaintiffs four promissory notes, for one fifth each, payable respectively, with interest, in one, two, three and four years. The plaintiffs then promise and agree, that upon pay *280 ment of the last of the notes, according to its tenor, the three preceding having been punctually paid, or in case the purchaser should make certain specified erections on the lots purchased, then on payment of the third of the notes, according to its tenor, the first and second having been paid, they will execute and deliver to the purchaser, his heirs or assigns, upon request, a good and sufficient deed of the lots purchased, in fee-simple, with covenants of warranty.
The agreement concludes with the following proviso : —
“ That if the said John D. Gardner, his heirs, executors, administrators, or assigns, shall refuse or neglect to pay, upon request, either of the three first-mentioned notes after it shall have become due and payable, or if he or they not having erected and completed such building as aforesaid, within the time specified, shall refuse or neglect to pay upon request the last of the said notes, after it shall have become due and payable, then and upon the happening of either of the said events, the foregoing obligation to give a deed shall become void and of no effect, and all moneys previously paid on account of said purchase shall be applied to the use of said Brunswick Land company to be by them retained as liquidated damages for the non-performance of said contract on the part of said John D. Gardner.”
There is not in this stipulation a single word, indicating that the defendant might at his pleasure refuse to pay his notes. If such had been the understanding and intention of the parties, the defendant would not have been likely to have made negotiable notes, which, it is admitted, he would have been obliged to pay, if in the hands of an indorsee. The language plainly imports, that the defendant was absolutely bound to pay all his notes, and that a neglect or refusal to pay was a violation of his obligation. Upon neglect or refusal to pay any of the notes, then what had been paid was to be retained as liquidated damages for the non-performance of his contract.
But if it had been stipulated, that the defendant might stop paying, at his pleasure, then refusing to pay was not a nonperformance of the contract; it was doing precisely what was *281 provided to be done, and was in entire accordance with the contract. It is quite clear, that the contract will not bear the construction thus put upon it by the defendant. The defendant was bound to pay his notes ; if he neglected or refused to pay any of them, the plaintiffs were at liberty to retain what had been paid as liquidated damages, and refuse to make a deed: but if they chose to enforce the payment of all the notes, they had a right to do so, and in that case they would be bound to convey the land. The provision, that the obliga tian to give a deed should be void if the defendant neglected to pay, was for the benefit of the plaintiffs, and they might avail themselves of it or not at their pleasure.
It is often provided in leases, in strong and unqualified terms, that if the lessee neglects or refuses to pay rent, the lease shall be void ; but it has always been held, that the lessee cannot, in such cases, set up his own neglect as avoiding the lease. Though the terms are express and positive, that the lease shall be void, yet they are held to mean, that the lease shall be void only at the election of the lessor, for whose benefit the provision is made. So, here, the defendant cannot set up his neglect to pay, as avoiding the plaintiffs’ obligation to make a deed; and though the terms are that the obligation shall be void, yet this must be at the election of the plaintiffs, for whose benefit the provision was made. This view of the case is abundantly supported by all the authorities ; and it is impossible to maintain any other construction of the contract. The result is, that the plaintiffs are entitled to recover on the notes.